**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **GEORGE G. KOUSTIS, et al.,**<br>*on behalf of themselves and all others similarly*<br>*situated,* | Case No.1:20-CV-02425-DAP |
| | Judge Daniel Aaron Polster |
| Plaintiffs, | |
| v. | |
| **SELECT PORTFOLIO SERVICING, INC.,** | |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs George G. Koustis and Ronald J. Collins ("Named Plaintiffs"),[1] on behalf of

themselves and the proposed Settlement Class, respectfully move this Court to enter the proposed

Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"),

attached as Exhibit 2 to the Settlement Agreement. The parties reached the proposed settlement

after litigation, discovery, and extensive arm's length negotiations.  As set forth in the

accompanying Memorandum of Law, the Named Plaintiffs respectfully request the Court grant the

Motion and direct notice be sent to Settlement Class Members.


Date: June 28, 2021                    By: */s/ Marc E. Dann*
                                            Marc E. Dann (0039425)
                                            Daniel M. Solar (0085632)
                                            Brian D. Flick (0081605)
                                            DANN LAW
                                            P.O. Box 6031040
                                            Cleveland, Ohio 44013

---

[1] Capitalized terms not defined herein are as stated in the Class Action Settlement Agreement, as
Exhibit A to this Motion and Memorandum

(216) 373-0539 telephone
(216) 373-0536 facsimile
*notices@dannlaw.com*

Thomas A. Zimmerman, Jr.
(*Illinois Bar No. 6231944*)
*tom@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
ww.attorneyzim.com

*Counsel for Plaintiffs and the putative Class*

**NAMED PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AGREEMENT**

### INTRODUCTION

Named Plaintiffs seek preliminary approval of a proposed class action settlement providing monetary relief for individuals harmed by Defendant Select Portfolio Servicing, Inc.'s ("SPS") assertion of an erroneous "active litigation" exception in written responses to Requests for Information, Notices of Error, and/or Qualified Written Requests sent by Settlement Class Members or their designated representatives.  The nationwide relief negotiated at arm's-length would end this litigation on terms that are fair, reasonable and adequate.

The Parties reached this proposed Settlement only after the Named Plaintiffs and SPS sufficiently understood the strengths and weaknesses of their respective positions.  Under the terms of the proposed Settlement, SPS will create a $105,000 non-reversionary fund for monetary payments to Settlement Class Members.  No claim forms are necessary, as Settlement Class Members will automatically receive a check. The $105,000 fund will also cover any court-approved administrative expenses, costs, attorneys' fees, and incentive awards.

There is no claims administration process, and Settlement Class Members will automatically receive monetary relief in an expedited manner. The Class Action Administrator will provide direct mail notice to the most updated, known addresses of Settlement Class Members, and if the direct mail is returned as undeliverable, the Class Action Administrator will then undertake industry-tested steps to locate an alternative address and resend the notice.  There is no reversion of unclaimed funds; instead, any unclaimed funds will be distributed as *cy pres* awards to a charity or charities [SAA1]approved by the Court.

3

Given the Settlement's many strengths, balanced against the risks of continued litigation, Named Plaintiffs respectfully request that the Court grant preliminary approval to the proposed Settlement, certify the Settlement Class, and direct notice to the Settlement Class Members.

**FACTUAL BACKGROUND**

**A.      The Circumstances that Prompted This Lawsuit**

Named Plaintiffs allege that between October 26, 2017 through October 26, 2020 they, along with Settlement Class Members, sent correspondence to SPS in the form of a Qualified Written Request, Notice of Error, and/or Request for Information as those terms are defined by 12 U.S.C. § 2605(e)(1)(B), 12 C.F.R. §§ 1024.35, 12 C.F.R. §§ 1024.36 and/or otherwise falling within the purview of 12 C.F.R. §§ 2605(k)(1) ("the Borrower Inquiries"). *See* Compl., PageID #10, ¶ 36. The Borrower Inquiries were sent to SPS at its designated address for receipt of such Borrower Inquiries established pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(d). *See* Compl., PageID #10, ¶ 37.  In response to the Borrower Inquiries, SPS replied with form letters (the "Active Litigation Letters") stating that:

> The issues presented in the inquiries are part of an ongoing litigation. SPS is aware of the issues presented in your letter and would like to work with you to reach a resolution. Due to the current litigation, SPS believes that it would be more appropriate to refrain from providing a detailed response to you at this time. We encourage you to continue working with our legal counsel to determine the available resolution options.

*See* Compl., PageID #10-11, ¶ 38. The Active Litigation Letters were the only substantive correspondence that SPS sent in response to the Borrower Inquiries. *Id.*

**B.      An Abbreviated History of These Legal Proceedings**

On October 26, 2020, the Named Plaintiffs filed this action asserting that SPS's practice of sending the Active Litigation Letters violates multiple provisions of the Real Estate Settlement Procedures Act ("RESPA"), as there is no "active litigation" exception in RESPA contained in 12

4

C.F.R. § 1024.35(g) and 12 C.F.R. § 1024.36)(f). *See* Compl., PageID #11, ¶ 39.  The Named Plaintiffs further asserted that SPS's failure to provide adequate written responses to the Borrower Inquiries violates either 12 C.F.R. § 1024.35(g), 12 C.F.R. § 1024.36(f), and/or 12 U.S.C. § 2605(k)(1).  *See* Compl., PageID #11, ¶ 39; *see also* Compl., PageID #21-22, ¶¶ 82-90 (Count I: Violations of 12 U.S.C. § 2605(e)(2), 12 U.S.C. § 2605(k)(1), 12 U.S.C. § 1024.35 and 12 C.F.R § 1024.36); *see also* Compl., PageID #22-24, ¶¶ 91-101 (Count II: Violations of 12 U.S.C. § 2605(k)(1)(C) and (E), and 12 C.F.R. § 1024.35).  The Named Plaintiffs asserted that SPS's failure to provide adequate written responses to the Borrower Inquiries caused actual harm as demonstrated by the incursion of time and postage used in sending the Borrower Inquiries, as well as the harm caused from SPS failing to send information that each affected Settlement Class Member was legally entitled to, or alternatively being deprived of the opportunity to receive a reasonable investigation of purported errors regarding the loans. *See* Compl., PageID #12, ¶ 44. Since the filing of the Complaint, SPS timely filed its Answer to the Complaint with Affirmative Defenses on January 8, 2021. *See* Doc. 11. Following the filing of the Answer, this Court held case management conferences with the parties on January 8, 2021, January 29, 2021, March 15, 2021, April 19, 2021, and May 19, 2021.

On June 28, 2021, the parties executed the formal Settlement Agreement now before the Court for which the Named Plaintiffs seek preliminary approval.

<u>TERMS OF PROPOSED SETTLEMENT</u>

**A.    Proposed Settlement Class**

The Settlement would offer relief to the following proposed Settlement Class:

All mortgage loan borrowers in the United States (1) who submitted an inquiry, dispute, or request for information in writing to SPS's designated address for Notices of Error, Requests for Information, or Qualified Written Requests, and (2)

to whom SPS sent an Active Litigation Letter, without more, from October 26, 2017
to October 26, 2020.

*See* Exhibit A - Settlement Agreement ("SA"), ¶ 11.  The Settlement Class specifically excludes

(1) SPS and (2) any Settlement Class Member who submits a timely opt-out notice. SA, ¶¶ 19-20.

**B.      Settlement Fund**

The proposed settlement provides for a $105,000 non-reversionary settlement fund. SA, ¶

12.  SPS will not be entitled to retain any part of the Settlement for any reason. SA, ¶ 17.  After

payment of attorney fees and expenses to Class Counsel as approved by this Court, payment of

class representative awards as approved by this Court, and settlement administration costs of

approximately $1,600, the remaining balance ("Class Settlement Fund") of approximately $61,400

would be distributed to the 74 Settlement Class Members. SA, ¶¶ 22-24.   The Settlement

Administrator will calculate the amounts of payments to Settlement Class Members on a *pro rata*

(proportionate) basis such that the total aggregate amount to be paid equals the Class Settlement

Fund and no money remains. SA, ¶ 24.  Each Settlement Class Member is projected to receive a

check in the approximate amount of $800.

With respect to Notice and Settlement Administration costs, SPS has agreed to advance

$5,000 to the Settlement Administrator within fourteen days of the entry of the Preliminary

Approval Order. SA, ¶ 22.  The parties have agreed that this amount shall be deducted from the

Total Class Settlement Amount. *Id.*  In the event that Notice and Administration costs exceed

$5,000, those additional costs will be deducted from the Class Settlement Fund. *Id.*  In the event

the Notice and Administration costs are less than $5,000, the difference will be added to the Class

Settlement Fund for distribution by the Settlement Administrator to the Settlement Class Members.

*Id.*

**C.     Agreement Relating to SPS's Business Practices**

In addition to the Settlement Fund, SPS has agreed to revise its policies and procedures to discontinue the practice of sending Active Litigation Letters as the only response to borrowers who send a valid Qualified Written Request, Request for Information, or Notice of Error under RESPA to SPS's designated address. SA, ¶ 18.

**D.     Service Awards to Class Representatives**

Class Counsel will make an application to the Court for Service Awards from the Settlement Fund to the two (2) Representative Plaintiffs, George Koustis and Ronald Collins, of One Thousand Dollars ($1,000) each or Two Thousand Dollars ($2,000) total. SA, ¶ 36.  Both Mr. Koustis and Mr. Collins actively participated in the prosecution of this case on behalf of the Settlement Class and assisted Class Counsel in settlement negotiations.

**E.     Attorneys' Fees and Costs**

Class Counsel will make an application to the Court for payment from the Total Class Settlement Amount of attorneys' fees of up to $40,000, plus the costs and expenses that Class Counsel has incurred in the prosecution of this Litigation ("Attorneys' Fees and Costs"). SA, ¶ 36. Said application shall be filed no earlier than seven (7) days before the deadline for opt-outs and objections. *Id.* The amount of Attorneys' Fees and Costs awarded by the Court shall be deducted from the Total Class Settlement Amount and paid by the Settlement Administrator to Class Counsel. *Id.*

**F.     Settlement Class Notice**

The Settlement Agreement provides that the Settlement Administration Costs (as defined in the Agreement (SA, ¶ 22), which includes all costs for notice, as well as claims administration) shall be paid from the Total Class Settlement Amount. SA, ¶ 22.  The Settlement Agreement

7

provides for direct mail notice to be sent by the Settlement Administrator to Settlement Class Members, subject to Court Approval. SA, ¶¶ 28-30.

The Parties seek approval of the following form of written Class Notice, which is attached as Exhibit 1 to the Settlement Agreement. The notice provides a sufficiently clear and concise description of the Litigation, the Settlement terms, the rights and responsibilities of the Settlement Class Members (*e.g.,* how to submit an opt-out, or object), and the date and location of the final approval hearing. SA, ¶¶ 28-30.

The Class Notice will be disseminated by the Settlement Administrator. SA, ¶ 28.  In addition SPS will, at its own cost and expense, send notice of the proposed Class Settlement to the appropriate state and federal officials in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), and file proof of the same with the Court. SA, ¶ 31.

Given the potential size of the Settlement Class, the Notice program is the best means practicable, and is reasonably calculated to apprise the Settlement Class Members of the Litigation and their right to participate in, object to, or exclude themselves from the Settlement.

**G.      Settlement Class Members' Right to Opt Out**

Any Settlement Class Member seeking to opt-out of the Settlement must submit a written request for exclusion from the Settlement Class to the Settlement Administrator—postmarked on or before the opt-out deadline (*i.e.*, 45 days from commencement of the Notice Program)—which must include: (a) the Settlement Class Member's full name, current address, and telephone number; (b) the address of the property for which a letter was sent bringing the Settlement Class Member within the scope of the Settlement Class; (c) the Settlement Class Member's personal and original signature or the original signature of a person previously authorized by law, such as a trustee, guardian, or person acting under a power of attorney, to act on behalf of the Settlement

Class Member with respect to a claim or right such as those in the Litigation (*i.e.,* conformed, reproduced, facsimile, or other non-original signatures are not valid); and (d) unequivocally state the Settlement Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, not to participate in the Settlement, and/or to waive all right to the benefits of the Settlement. SA, ¶¶ 19, 29.  In cases where a Settlement Class Member includes co-obligors, co-borrowers or co-applicants, the opt-out notice must exclude all obligators, borrowers, or applicants. SA, ¶ 29.  In cases where a Settlement Class Member has multiple loans, the opt-out notice must specify which loan the Class Member is opting-out of the Settlement for or all loans shall be considered as excluded. SA, ¶ 29.

All Settlement Class Members who properly file a timely Request for Exclusion from the Settlement Class shall (a) not be bound by any orders or the Final Judgment entered in this Litigation, (b) not be entitled to relief under the Settlement Agreement, (c) not gain any rights by virtue of the Settlement Agreement, and (d) not be entitled to object to any aspect of the Settlement Agreement. SA, ¶¶ 20, 29. No person may opt out of the Settlement Class through a so-called "mass" or "class" opt-out. SA, ¶ 29.

## H.    Settlement Class Members' Right to Object

Any Settlement Class Member who does not opt out of the Settlement Class may object to the Settlement or any portion of the Agreement. SA, ¶ 30. Each Objection must (a) set forth the Settlement Class Member's full name, current address, and telephone number; (b) the address of the property for which a letter was sent bringing the Settlement Class Member within the scope of the Settlement Class; (c) the Settlement Class Member's personal and original signature or the original signature of a person previously authorized by law, such as a trustee, guardian, or person acting under a power of attorney, to act on behalf of the Settlement Class Member with respect to

9

a claim or right such as those in the Litigation (*i.e.,* conformed, reproduced, facsimile, or other non-original signatures are not valid); and (d) contain a statement of the legal and factual basis for the Objection, and provide copies of any documents that the Settlement Class Member wishes to submit in support of his/her/their position. *Id.* All written notices of the objection must be filed with the Clerk of the Court, and served upon Class Counsel and Defense Counsel, no later than forty-five days from the commencement of the Notice Program. SA, ¶¶ 19, 30, 50.

## I.    Schedule for Settlement Administration

The Parties request that the Court set the following schedule for the proposed Settlement:

- Within thirty (30) days of entry of Preliminary Approval, the Settlement Administrator shall distribute the Class Notice. SA, ¶ 28.

- Settlement Class Members shall have forty-five (45) days from the commencement of the Notice program to request to be excluded from the Settlement Class or to object to the Settlement Agreement. SA, ¶¶ 19, 29, 30.

- A final hearing on the fairness and reasonableness of the Settlement Agreement and whether final approval shall be given to it, and the requests for attorneys' fees, expenses and Service Awards, will be held before this Court.

## LEGAL STANDARD

Settlement of class actions is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Federal Rule of Civil Procedure ("Rule") 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *see also Amos v. PPG Indus.*, No. 2:05-cv-70, 2015 WL 4881459, at *1 (S.D. Ohio Aug. 13, 2015) (same). Named Plaintiffs request that the Court preliminarily approve the proposed Settlement, the first step in the three-step process.

At this step, the Court's task is to determine whether "giving notice is justified by the parties' showing that the court will likely be able to" grant final approval to the settlement and certify the proposed class. Fed. R. Civ. P. 23(e)(1)(B); *see also* Fed. R. Civ. P. 23(e)(1), advisory committee's note to 2018 amendments ("The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object."). Revised Rule 23 provides a checklist of seven factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate for the purposes of final approval. *See* Fed. R. Civ. P. 23(e)(2). These are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

At preliminary approval, courts are not required to "make an affirmative determination of each factor but, rather, should grant preliminary approval if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval.'" *Bailey v. Verso Corp.*, No. 3:17-CV-332, 2021 WL 673164, at *3 (S.D. Ohio Feb. 22, 2021) (quoting *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-cv-1147, 2020 WL 5366380, at *2 (S.D. Ohio Sept. 8, 2020)); *see also Bautista v. Twin Lakes Farms*, Inc., No. 104-CV-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007) ("The court's role in reviewing settlements must be limited to the extent necessary to reach a reasoned judgment that

the agreement is not the product of fraud or overreaching by, or collusion between the negotiating

parties, and that the settlement taken as a whole is fair, reasonable, and adequate to all concerned.")

(internal quotes omitted).

In essence, the Court must preliminarily determine that the settlement is sufficiently fair,

reasonable, and adequate so that it can "direct the preparation of notice of certification, proposed

settlement, and date of the final fairness hearing" to all those affected by it. *In re Skechers Toning

Shoe Products Liab. Litig*., No. 3:11-MD-2308-TBR, 2012 WL 3312668, at *7 (W.D. Ky. Aug.

13, 2012); *see also In re Prandin Direct Purchaser Antitrust Litig*., No. 2:10-CV-12141-AC-DAS,

2014 WL 8335997, at *3 (E.D. Mich. Oct. 2, 2014) ("The ultimate approval of a class action

settlement requires a finding that the settlement is fair, adequate, and reasonable."); *Brotherton v.

Cleveland*, 141 F. Supp. 2d 894 (S.D. Ohio 2001); *In re Southern Ohio Corr. Facility*, 173 F.R.D.

205, 211 (S.D. Ohio 1997).

### ARGUMENT

**A.     Certification of the proposed class for purposes of settlement only is appropriate.**

The Supreme Court has recognized that the benefits of a proposed settlement of a class

action can be realized only through the certification of a settlement class. *See Amchem Prods. v.

Windsor*, 521 U.S 591, 620 (1997). Accordingly, named Plaintiffs seek the conditional certification

of the Settlement Class set forth above and in the Settlement Agreement.

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of

Rule 23(a), and one of the requirements of Rule 23(b)." *Pelzer v. Vassalle*, 655 F. App'x 352, 363

(6th Cir. 2016). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and

adequacy. Further, Named Plaintiffs seek certification of the Settlement Class pursuant to Rule

23(b)(3), which provides that certification is appropriate where "the court finds the questions of

law or fact common to class members predominate over any questions affecting only individual

members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

As discussed below, these requirements are met for purposes of settlement in this case.

### 1.    Numerosity

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. Fed. R. Civ. P. 23(a)(1). There is no magic number needed to satisfy numerosity; in the Sixth Circuit, numerosity has been satisfied with a class of 35. *See In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1076 (6th Cir. 1996) ("the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement" (internal quotation marks omitted)); *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) ("substantial" numbers satisfy, and thousands are "substantial"). Here, discovery has shown that there are 74 Class members, more than satisfying this element.

### 2.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.*

In this case, there are numerous common questions of law and fact, including

- Whether the Borrower Inquiries were Qualified Written Request, Notice of Error, and/or Request for Information as those terms are defined by 12 U.S.C. § 2605(e)(1)(B), 12 C.F.R. §§ 1024.35, 12 C.F.R. §§ 1024.36 and/or otherwise falling within the purview of 12 C.F.R. §§ 2605(k)(1);

- Whether the Borrower Inquiries were sent to SPS's designated address for receipt of Requests for Information and/or Notices of Error pursuant to 12 C.F.R. § 1024.35(c) and 12 C.F.R. § 1024.36(d);

- Whether SPS responded to the Borrower Inquiries with an "Active Litigation Letter";

- Whether SPS provided any substantive response to the Borrower Inquiries other than the "Active Litigation Letter";

- Whether the Borrower Inquiries were sent to SPS between October 26, 2017 and October 26, 2020;

- Whether SPS's response to the Borrower Inquiries was in compliance with 12 C.F.R. § 1024.35(g), 12 C.F.R. § 1024.36(f), and/or 12 U.S.C. § 2605(k)(1); and

- Whether SPS's actions in sending the Active Litigation Letters violates RESPA.

The Named Plaintiffs in this case have more than satisfied this element.

### 3.      Typicality

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members,

and if his or her claims are based on the same legal theory." *Id.*; *see also Am. Med. Sys.*, 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented.

Here, all of the Named Plaintiffs' claims arise out of the same conduct; namely SPS's actions to send an Active Litigation Letter in response to receiving a Borrower Inquiry. All of the Representative Plaintiffs and Settlement Class Members' claims arising out of this conduct are based on the same legal theory—*i.e.,* violations of the Real Estate Settlement Procedures Act. Typicality is satisfied.

### 4.     Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria: 1) the "representative must have common interests with unnamed members of the class," and 2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

Here, the Named Plaintiffs are adequate because they have actively sought to recover on behalf of themselves and others against SPS, and they have actively participated in the Litigation of this case. The Named Plaintiffs will continue to vigorously prosecute this Litigation on behalf of the Settlement Class.

In addition, Named Plaintiffs' counsel are qualified. The Agreement designates DannLaw and the Zimmerman Law Offices, P.C. as Class Counsel. These firms have collectively invested considerable time and resources into the prosecution of this action. Class Counsel possesses a wealth of experience litigation complex class action lawsuits, and were able to negotiate an

outstanding settlement for the Settlement Class Members. *See* Declaration of Marc Dann ("Dann Decl."), ¶¶ 1-9. Class Counsel negotiated the terms of the Settlement Agreement and believe the Settlement to be fair, reasonable, and adequate and in Plaintiffs' and the Settlement Class's best interests. Dann Decl., ¶¶ 10-14. Furthermore, Class Counsel's law firms will continue to fully commit the resources necessary to represent the Settlement Class. Dann Decl., ¶ 12. Class Counsel have diligently identified, researched, and prosecuted all potential claims in an efficient and timely manner resulting in payments to Settlement Class Members without the need to submit a claim form. Based on the results achieved here, the Court should appoint these firms as Class Counsel, and determine that Rule 23(a)'s adequacy requirement is satisfied.

### 5. Rule 23(b)(3) Requirements

Named Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *7 (W.D. Ky. Dec. 22, 2009) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (6th Cir. 1996)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp.*, 722 F.3d at 860. With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. These factors include: (i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Willis v. Big Lots, Inc.*, No. 2:12-CV-604, 2017 WL 1063479, at *2 (S.D. Ohio Mar. 17, 2017) (citing Fed. R. Civ. P. 23(b)(3)).

As noted above, there are several questions of law and fact that predominate over any questions that may affect individual Settlement Class Members. SPS engaged in a uniform course of conduct applicable to all Settlement Class Members, including the foundation allegations that a Borrower Inquiry was sent to SPS at SPS's designated Notice Address, SPS generated and sent an Active Litigation Letter in response to the Borrower Inquiry, and SPS failed to send any other substantive response to the Borrower Inquiry. This central liability issue is subject to generalized proof, and it is a question that is common to all Settlement Class Members. *See, e.g.*, *In re Countrywide*, 2009 WL 5184352, at *6 ("the proof required [must focus] on Defendant's conduct, not on the conduct of the individual class members"). This also renders the proposed Settlement Class sufficiently cohesive. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Settlement Agreement provides members of the Settlement Class with quick, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member who is dissatisfied with the Settlement to object to it or to request exclusion from the Settlement Class. Moreover, the cost of litigating each Settlement Class Members' case on an individual basis would be substantial for each Settlement Class Member; the most reasonable and economically feasible method of litigating and resolving these claims is through the class device. *See Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)). Here, individual trials are not feasible; the proposed class action remedy is superior.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### SETTLEMENT CLASS COUNSEL ARE WELL QUALIFIED TO REPRESENT THE INTERESTS OF THE SETTLEMENT CLASS

"An order certifying a class action . . . must also appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). In appointing class counsel, courts should consider (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii)

counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As outlined above, the work of Class Counsel, as well as their prosecution prosecuting complex litigation matters, demonstrate that they are well qualified to represent the Settlement Class.

### THE NOTICE PLAN SATISFIES CONSTITUTIONAL DUE PROCESS

The Parties agreed upon Class-settlement.com ("Settlement Administrator") to be the Settlement Administrator for class notice and settlement administration. SA, ¶¶ 28, 50. Class-settlement.com has significant experience as a class action notice provider and settlement administrator, and has submitted an estimate to provide Class Notice and administer the Settlement for approximately $1,600. The Parties request the Court's approval and appointment of Class-settlement.com as the Settlement Administrator.

As explained below, the contents of the Notice and the plan for dissemination of the Notice—SA, ¶¶ 28-30—should also be approved.

### A.     Contents of the Notice

"The notice should describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). "All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* The Notice is designed to provide information about the Settlement, along with clear, concise, easily understood information about Settlement Class Members' legal rights.

The Notice includes a fair summary of the general terms of the Settlement; instructions for how to opt-out of or object to the Settlement; information on how Settlement Class Members can

obtain more information; the amount of money Class Counsel may request for attorneys' fees, costs and expenses, and Class Representative Service Awards; and will set forth the date, time, and place of the final fairness hearing, as set by the Court. *See* SA, ¶¶ 28-30, and Exhibit 1 to SA.

The Notice contains information that a reasonable person would consider material in making an informed, intelligent decision of whether to opt out of the Settlement or remain a member of the Settlement Class and be bound by a final judgment. Altogether, the Notice fairly apprises the Settlement Class Members of the terms of the Settlement, and the options that are open to them in connection with this Litigation.

### B.     Notice Program

Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Pursuant to Federal Civil Rule 23(c)(2)(B), for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

Additionally, "[t]he Due Process Clause … gives unnamed class members the right to notice of the settlement of a class action. To comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 422–23 (6th Cir. 2012) (citations omitted); *see also In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 684 (N.D. Ohio 2015), *reconsideration denied*, No. 1:10 MD 2196, 2015 WL 12748013 (N.D. Ohio Dec. 21, 2015); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974) (notice to absent class members must meet minimum due process requirements).

20

The Notice documents and the Notice program should be approved because they are the best notice practicable under the circumstances, constitute due and sufficient notice to the Settlement Class Members, and comply with Fed. R. Civ. P. 23 and due process requirements.

### THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

The final step in the preliminary approval process is to schedule a final approval hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement. The Court will determine at or after the final approval hearing whether the Settlement should be finally approved; whether to enter the final approval order under Rule 23(e); and whether to approve Class Counsel's application for attorneys' fees, costs and expenses, and request for Service Awards for the Representative Plaintiffs. Representative Plaintiffs request that the Court schedule the final approval hearing approximately 100 days after entry of the Preliminary Approval Order or at a date otherwise convenient for the Court, and in compliance with the provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Class Counsel will file the Motion for Final approval no later than seven (7) days before the final approval hearing.

WHEREFORE Plaintiffs George G. Koustis and Ronald J. Collins respectfully request that the Court enter an Order:

A.  Preliminarily approving the Settlement;

B.  Certifying the Settlement Class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only;

C.  Appointing the Named Plaintiffs as Class Representatives of the Settlement Class;

D.  Appointing DannLaw and the Zimmerman Law Offices, P.C. as Class Counsel;

E.  Appointing Class-settlement.com as the Settlement Administrator;

F.  Approving as to form and content the Notice attached to the Settlement Agreement as Exhibit 1;

G.  Scheduling a final approval hearing to consider entry of a final order approving the Settlement, the request for attorneys' fees, costs, and expenses as well as Class Representative Service Awards, and

H.  Granting all other relief this Court may deem just and proper.

Date:  June 28, 2021                    By: /s/ Marc E. Dann
                                        Marc E. Dann (0039425)
                                        Daniel M. Solar (0085632)
                                        Brian D. Flick (0081605)
                                        DANN LAW
                                        P.O. Box 6031040
                                        Cleveland, Ohio 44013
                                        (216) 373-0539 telephone
                                        (216) 373-0536 facsimile
                                        *notices@dannlaw.com*

                                        Thomas A. Zimmerman, Jr.
                                        (*Illinois Bar No. 6231944*)
                                        *tom@attorneyzim.com*
                                        ZIMMERMAN LAW OFFICES, P.C.
                                        77 W Washington Street, Suite 1220
                                        Chicago, Illinois 60602
                                        (312) 440-0020 telephone
                                        (312) 440-4180 facsimile
                                        ww.attorneyzim.com

                                        *Counsel for Plaintiffs and the putative Class*

22